| | |
|---|---|
| **LORETTA I. EURE** | § |
| **Plaintiff,** | § |
| | § |
| | § |
| **v.** | §      **CIVIL NO.: 5:12-CV-01119-DAE** |
| | § |
| **THE SAGE CORPORATION,** | § |
| **Defendant** | § |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON PLAINTIFF EURE'S CLAIMS

### TO THE HONORABLE DISTRICT JUDGE:

### I.  SUMMARY OF ARGUMENT

**1.**

Defendant The Sage Corporation ("Sage") files this motion seeking summary judgment as to all of Plaintiff Eure's claims. Plaintiff Loretta I. Eure ("Eure") is a former Sage employee who simply did not show up for work and resigned without making any complaint or giving any advance notice or warning. Eure alleges Sage: (1) discriminated against her based on her gender (female); (2) wrongfully terminated and retaliated against her for making a complaint of discrimination or opposing discrimination; and (3) negligently hired, supervised, trained and retained Plaintiff's supervisors. *See* Plaintiffs' Complaint Count I, Count II, and Count III.

**2.**

In fact, Eure was not discriminated against because of her gender. She was scheduled for fewer hours of work than the most experienced instructors because the project in question involved training experienced drivers and Sage believed that the instructors with the most experience in driving and instructing should be used. The instructors who were given more hours had substantially more experience than Eure.

{02879289.DOCX / 2}

**3.**

Eure was not wrongfully terminated and retaliated against. First, Eure was not terminated but simply resigned. Indeed, no adverse employment action was taken against Eure. Secondly, Eure could not have been retaliated against since she did not engage in any protected activity until after she had voluntarily resigned. Thirdly, Eure cannot show the required causal connection between Eure's protected activity (which did not occur until after her resignation) and any adverse employment action.

**4.**

Eure has no valid negligence claim under Texas law against Sage because the exclusive remedy for such negligence claims are the discrimination laws (Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, and the Texas Commission on Human Rights Act, Texas Labor Code § 21.053 *et seq.* ("TCHRA")). Further, such negligence claims cannot be asserted by Eure because any negligence claims against Sage are barred by Sage's workers' compensation coverage under Texas law.

For these reasons, summary judgment for Sage is proper on all of Eure's claims.

**5.**

## II.      STATEMENT OF FACTS

See the attached Factual Appendix.

**6.**

## III.      ARGUMENT AND AUTHORITIES

**A.      Legal Standard Under Texas Labor Code § 21.053 *et seq.*, Title VII of the Civil Rights Act 42 U.S.C. § 2000(e) *et seq.*, and 42 U.S.C. § 1981**

**7.**

Count I of Plaintiff's Complaint complains of gender discrimination. Discrimination claims

under the TCHRA, Title VII, and § 1981 are "governed by the same evidentiary framework." *Jackson v. Watkins,* 619 F.3d 463, 466 (5th Cir. 2010); *Antwi v. CVS Corp.,* 294 F. App'x 145 (5th Cir. 2008). As the Court understands, gender discrimination does not come within the prohibitions against racial discrimination provided under 42 U.S.C. § 1981. Thus, Eure has no claim under 42 U.S.C. § 1981. However, to the extent Eure has a claim under 42 U.S.C. § 1981, that claim and Eure's other gender discrimination claims are addressed simultaneously in this motion.

**8.**

Eure has no direct evidence of gender discrimination.[1] Therefore, Eure's claims must be analyzed under the *McDonnell Douglas* burden-shifting framework. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,* 482 F.3d 408, 411 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Accordingly, Eure must first establish a *prima facie* case of discrimination. *Id.* To establish a *prima facie* case of discrimination, Eure must show: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) that because of her membership in the protected class, she was replaced by someone outside her protected class, or she was treated less favorably than were similarly situated employees outside the protected class, under nearly identical circumstances. *Lee v. Kan. City So. Ry.,* 574 F.3d 253, 259 (5th Cir. 2009); *Irons v. Aircraft Serv. Int'l, Inc.,* 392

---

[1] Eure cannot avoid the McDonnell Douglas burden-shifting framework by asserting what she believes to be direct evidence of sexual discrimination. The comments Eure claims were made (which allegations Sage denies), but do not meet the standard for such comments to be considered direct evidence.

There is a clear and high standard that a remark must meet to be considered direct evidence of discrimination. *Moss v. BMC Software, Inc.,* 610 F.3d 917, 928–29 (5th Cir. 2010). In order for a comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that race or gender was an impermissible factor in the decision to terminate the employee. *Id.* at 929. Remarks may serve as direct evidence of discrimination if they are: 1) gender related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue. *Id.*; *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 683 (5th Cir. 2001).

Here, Eure cannot show remarks that meet that standard. In addition to other reasons, Eure cannot show any adverse employment action was taken against her.

{02879289.DOCX / 2}                                                                                                   3

F. App'x 305, 311 (5th Cir. 2010).[2] Only if Eure establishes a *prima facie* case, does the burden shift to Sage to articulate a legitimate nondiscriminatory reason for its employment actions. *Lee*, 574 S.W.3d at 259. Once Sage articulates legitimate nondiscriminatory reason(s), Eure must then show that the nondiscriminatory reasons are pretexts for discrimination. *See id.*

## B. Eure Cannot Establish a *Prima Facie* Case for Discrimination Based on Gender as a Matter of Law. Eure Was Not Treated Less Favorably than Similarly Situated Employees Outside of Her Protected Class.

### 9.

Eure cannot establish the termination of Eure or the constructive discharge of Eure (See Eure deposition pp. 60, 68, and discussion at Section VI herein). Indeed, Eure's EEOC Charge only complains of such a termination (Exhibit 8 to Eure's deposition). Thus, this should be the only employment action Eure and pursue and summary judgment for Sage is required. "[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies. *Nat. Assn. of Govt. Emps. v. City Pub. Serv. Bd of San Antonio*, 40 F3d 698, 711 (5th Cir. 1994).

To the extent further argument is necessary, the only alleged adverse employment action which Eure can possibly complain of is the reduction in the number of the hours she was scheduled to work initially and being left off the schedule the next week after Eure did not show up for work or return emails or calls to her about her availability. Eure was a part time instructor for Sage. When Sage began a training and evaluation program for Sanjel, Eure was initially scheduled by Ms. Brandon for a larger number of hours. However, this program was a program

---

[2] In Plaintiff's Complaint, Eure alleges disparate impact as well as disparate treatment, *see* Count I of Eure's Complaint. However, Plaintiff's EEOC Charge fails to identify any such policies and thus Plaintiff has failed to exhaust her administrative remedies for such claim. In her complaint here, in her EEOC Charge, and in her answer to interrogatory number 8 (Exhibit 6 to this Motion), Plaintiff has not identified any employment practice that has a disproportionate impact and cannot establish causation by offering statistical evidence to show that the practice in question resulted in prohibited discrimination. *See Nat. Assn. of Govt. Emps.* 40 F.Sd. 711 and *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977); *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002). Thus, to the extent that Eure makes any such claim, summary judgment on such claim is also proper.

for experienced drivers. Thus, Sage management (Ms. Blake after consultation with Ms. Campanian) revised the assigned instructor list to ensure that the most experienced instructors were used. At the time this decision was made, neither Ms. Blake or Ms. Campanian had met or seen Eure. Eure had relatively little truck driving experience. Her experience was less than the instructors who were given the increased hours. Indeed, Eure had less experience than many of the drivers who were being instructed under the program. Eure was not put on the schedule for instruction the week of April 4, 2011 after she called in sick on March 31, 2011, sent in an email on March 31, and then did not call or return calls on Thursday, March 31, 2011, or Friday, April 1, 2011, as requested by Sage management.

## 10.

Thus, Eure cannot meet her burden on the fourth element of her *prima facie* case—that she was replaced by another employee of a different gender or she was treated less favorably than were similarly situated employees outside her protected class under "nearly identical circumstances." *See Lee,* 574 F.3d at 259; *Perez v. Tex. Dept. of Crim. Justice,* 395 F.3d 206, 213 (5th Cir. 2004). The Fifth Circuit has consistently held that a plaintiff who proffers a fellow employee as a comparator must demonstrate that the employment action at issue—in this case, a reduction in hours was not taken against the comparator under "nearly identical circumstances." *Bryant v. Compass Group USA, Inc.,* 413 F.3d. 471, 478 (5th Cir. 2005), *Jackson v. Blockbuster, Inc.,* No. 4:09-CV-119, 2010 WL 2268086, *5 (E.D. Tex. June 4, 2010); *see also Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.,* 698 F. Supp. 2d 730, 760 (S.D. Tex. 2010).

## 11.

Nearly identical is a strict standard. *Collins-Pearcy,* 698 F. Supp. 2d at 759 (citing *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir. 2004)). The proffered comparator must have "held the same job or responsibilities, shared the same supervisor . . . and have essentially

{02879289.DOCX / 2}                                                              5

comparable violation histories. [C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Brooks v. Lubbock Cnty. Hosp. Dist.,* 373 F. App'x 434, 436 (5th Cir. 2005) (quoting *Lee,* 574 F.3d at 260); *accord Williams v. Trader Pub. Co.,* 218 F.3d 481, 484 (5th Cir. 2000); *see also Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.* 245 F.3d. 507, 514 (5th Cir. 2001). In *Brooks,* while the proffered comparators had also lost significant amounts of money through mismanagement of accounts, the plaintiff could not also show that the comparators had other complaints such as failure to respond to emails. *Brooks,* 373 Fed. Appx. at 436–37.

### 12.

Here Eure had less experience than the instructors who were scheduled for more hours. Eure cannot show an instructor with her same level of experience whose hours were not reduced, when Eure's hours were reduced. Likewise, Eure cannot show that any other employee called in sick on Thursday, sent in an email on Thursday indicating serious dissatisfaction with her job, failed to call in or return calls and emails on Thursday or Friday as requested and despite all of that was placed on the schedule for the next week. Therefore, Eure cannot establish her *prime facie* case and summary judgment should be granted to Sage. *See Williams,* 218 F.3d at 484; *Nzeda v. Shell Oil Co.,* 228 F. App'x 375, 376 (5th Cir. 2007).

### C.    Sage Had a Legitimate Nondiscriminatory Reason for the Reduction of Eure's Hours and Eure Cannot Show Pretext.

### 13.

Even assuming that Eure could establish a *prima facie* case, summary judgment is still proper because Sage had a legitimate, non-discriminatory reason for reducing Eure's hours—her lesser experience than the selected employees and her refusal to call in or return calls to indicate

her availability for work—and Eure cannot show pretext. *Burrell*, 482 F.3d at 411; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).

**14.**

Eure has no evidence that similarly situated employees were treated differently, which is required to show pretext. Eure cannot show the reduction in hours decision was based on her gender. Sage believed instructors with more truck driving experience were needed on this project and that Eure lacked the experience necessary to both perform at the level needed and to have credibility with the experienced drivers. The fact that Eure may disagree with her reduction in hours does not show pretext.

Further, Eure's calling in sick on Thursday, March 31, 2011, stating she has the flu, Eure's failure to call in on Friday, April 1, and Eure's failure to return calls and emails from Sage on both Thursday and Friday, March 31 and April 1, 2011 reasonably caused Sage to believe Eure did not intend to work the next week. Significantly, the Fifth Circuit has long held that an employer's belief, "even an incorrect belief... constitutes a legitimate, nondiscriminatory reason" and will not show pretext. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive"); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue"); *see also Davenport v. Northrop Grumman Sys. Corp.*, 281 F. App'x 585, 588 (7th Cir. 2008); *Collins-Pearcy*, 698 F. Supp. 2d at 757. Thus, summary judgment for Sage is proper.

## IV. EURE CANNOT SHOW SHE WAS RETALIATED AGAINST BECAUSE OF ANY COMPLAINT OF DISCRIMINATION OR OPPOSITION TO DISCRIMINATION

**15.**

A plaintiff establishes a *prima facie* case of retaliation under the TCHRA, Title VII and § 1981 by showing (i) she engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action. *Aryain v. Wal-Mart Stores, Tex. LP*, 534 F.3d, 473, 484 (5th Cir. 2008), *Taylor v. UPS, Inc.*, 554 F.3d 510, 523 (5th Cir. 2008); *see also Hernandez v. Yellow Transp. Inc.*, 670 F.3d. 644, 651 (5th Cir. 2012). If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996). Once the employer has articulated the legitimate non-discriminatory reason, then it is the plaintiff's burden to show the reason is false and is a pretext for retaliation. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *Septimus v. Univ. of Hous.*, 399 F.3d 601 (5th Cir. 2005). Finally, after the employee has met their burdens, the employee must show that the protected activity was the "but for" cause. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L.Ed.2d. 503, 524–525 (2013).

**16.**

An employee has engaged in protected activity when she has (1) opposed any practice made an unlawful employment practice by Title VII (opposition clause), or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII (participation clause) *Douglas v. DynMcDermott Petroleum Operations, Co.* 144 F.3d. 364, 372 (5th Cir. 1998). Eure did not engage in any protected activity until after she had left work never to return by her own choice. Eure did not make a complaint of any kind, file a

complaint with the EEOC or the TWC, or testify or otherwise participate in any proceeding, and did not oppose any discriminatory practice until after she voluntarily left work. Eure cannot show that she engaged in any protected activity. Indeed, Eure's EEOC Charge makes no reference to any protected activity or to any retaliation (Exhibit 8 to Eure's deposition). Any alleged retaliation occurred before Eure filed her EEOC Charge. Thus, Eure failed to exhaust her administrative remedy which is required to pursue this claim. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d. 847, (8th Cir. 2012) and *McCray v. DPC Industries*, 942 F. Supp. 288, 295 (E.D. Tex. 1996).

**17.**

Assuming, arguendo, that Eure did engage any protected such activity, Eure cannot show that an adverse employment action occurred. As noted above, Eure alleges that she was terminated. She was not. The only employment action of any kind taken against Eure was the reduction in her hours. Eure cannot show that there was a casual link between the protected activity and the employment action. Eure cannot show any protected action she engaged in that occurred before the alleged termination or the reduction in her scheduled hours. Thus, Eure cannot show any protected action had a causal relationship with any adverse employment action (the reduction in her hours).

**18.**

The Fifth Circuit affirmed a grant of summary judgment for the employer in a similar case. *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485 (5th Cir. 2011). There the Fifth Circuit held that the plaintiff Davis could not demonstrate causation between her "protected activity" and the "adverse employment action" becauseas the district court recognized, the initial decision not to renew Davis's contract was made on April 18, 2008, before she filed her grievance on

May 15, 2008. *Id.* at 493. Because the protected activity occurred after the adverse employment action at issue, Davis could not demonstrate causation. *Id.*

**19.**

For the same reasons, Eure cannot show causation as needed for a *prima facie* case. Further, as set forth in the discrimination section above, Sage had a legitimate non-discriminatory reason for the reduction in hours, Eure's lack of experience and her calling in sick saying she has the flu, along with her failure to call in or return calls and emails to indicate her availability for work the week of April 4, 2011. Eure cannot meet her required burden of showing that Sage's reasons were false and a pretext for retaliation.[3] Further, Eure cannot show that Eure's protected activity was the "but for" cause of the alleged retaliation, her alleged termination. Thus, summary judgment for Sage is proper.

## V. EURE CANNOT SHOW A HOSTILE WORK ENVIRONMENT BASED ON HER GENDER

**20.**

To avoid a summary judgment on her hostile environment claim, Eure must show: (1) she was subjected to discriminatory intimidation, ridicule and insults based on her gender; (2) that was sufficiently severe or pervasive; (3) so as to affect a term or condition of employment; and (4) Sage knew or should have known about the harassment and failed to take prompt remedial action. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 347–348 (5th Cir. 2007).

To determine if harassment occurred, a court must review the totality of circumstances, including the frequency and severity of the conduct, whether it is physically threatening or

---

[3] As the Fifth Circuit has noted, summary judgment is still proper when the plaintiff has no evidence of retaliation except temporal proximity. *Strong v. Univ. Healthcare Sys. LLC,* 482 F.3d 802, 808 (5th Cir. 2002); *see also Robertson v. Alltel Info. Servs.,* 373 F.3d 647, 656 (5th Cir. 2004).

{02879289.DOCX / 2}                     10

humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

## 21.

In this case, Plaintiff's complaints of harassment directed to her or even done in her presence or vicinity that in any way relate to her gender are very limited. Eure admits that no gender comments were directed to her and that she never heard her supervisor use gender-based terms. Eure Dep. pp. 41–43, 48–53. Isolated comments or other actions claimed by Eure to have occurred are insufficient as a matter of law to establish harassment based on gender.[4]

## 22.

Here the conduct alleged was clearly neither severe nor pervasive against Eure. The U.S. Supreme Court, the Fifth Circuit, and Texas Courts have recognized that not all offensive remarks or actions are actionable harassment and that not all harassment affects a term, condition or privilege of employment. *Harris,* 510 U.S. at 21; *Shepard v. Comptroller of Pub. Accounts of Tex.,* 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999).

## 23.

Eure has not shown a pattern of gender-based inappropriate incidents directed at her. Isolated incidents of questionable conduct, some of which were not even directed at Eure, are not enough to avoid summary judgment. *See Howard v. UPS,* 447 F. App'x 626, 632 (5th Cir. 2011). Thus, summary judgment for Sage is proper.

## 24.

Eure's harassment claim is also barred by Sage's affirmative defense.

---

[4] "'[S]imple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges' that can survive summary judgment." *Turner,* 476 F.3d at 348 (quoting *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Here Eure also cannot defeat Sage's affirmative defense to her harassment claim. Under the Supreme Court's *Faragher* and *Ellerth* decisions, an employer has an affirmative defense to a hostile work environment harassment claim if (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher,* 524 U.S. at 778; *see also Staller v. Serv. Corp.,* 2006 Tex. App. LEXIS 9130 (Tex. App.—San Antonio 2006, no pet.).

## 25.

Sage exercised reasonable care to prevent and correct promptly any harassing behavior by having a harassment policy with along with several complaint mechanisms which were in the employee handbook communicated to all employees and by investigating complaints and taking action to resolve any problems found. *See* Affidavit of Barbara Blake. Sage is entitled to use this affirmative defense because Carmella Campanian was not Eure's supervisor. Ms. Campanian did not have authority to take tangible employment actions against Eure. *See Vance v. Ball State Univ.,* 133 S. Ct. 2434, 2443, 186 L.Ed.2d. 265 (2013). To be a supervisor, a person must be "empowered to take tangible employment actions against the victim," i.e. to effect "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Id.* Eure unreasonably failed to take advantage of any preventive or corrective opportunities by failing to make any complaint to any supervisor at Sage, or any outside agency until she sent a letter to Gregg Aversa after she left work to never return. *See* Affidavits of Gregg Averson, Barbara Blake and Carmella Campanian and Plaintiff's Complaint.

12

**26.**

Thus, a summary judgment for Sage on Eure's harassment claim is also proper because Eure failed to establish a *prima facie* case of harassment and because Sage has established its affirmative defense.

## VI. CONSTRUCTIVE DISCHARGE

**27.**

Full or partial summary judgment in favor of Sage is proper because Eure cannot show that she was constructively discharged. To show constructive discharge, a plaintiff must show that "a reasonable party in his shoes would have felt compelled to resign." *Benningfield v. City of Hous.,* 157 F.3d 369, 378 (5th Cir. 1998). Such a claim requires a "greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.; Brown v. McKinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir. 2001); *Ward v. Bechtel Corp.,* 102 F.3d. 199, 202 (5th Cir. 1997).

**28.**

Eure cannot show that a reasonable employee in her shoes would have resigned. *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 342 (5th Cir. 2005) (citing *Jurgens v. EEOC,* 903 F.2d 386, 390 (5th Cir. 1990)). In determining whether a reasonable employee would feel compelled to resign, the Fifth Circuit considers the relevancy of the following events, independently or combined:

(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*See Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).[5]

**29.**

Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 167 (5th Cir. 2007). Here Eure cannot show a hostile environment, let alone the higher standard needed for constructive discharge. Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge. *Id.* (citing *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429–30 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994)).[6]

**30.**

Here, Eure claims constructive discharge when the evidence does not support such a claim. Fifth Circuit cases clearly require the plaintiff not to assume the worst and to jump to conclusions.[7] Here, Eure did exactly that. Eure left work for good and never returned to work before even making her complaint about Carmella Campanian. Thus, Eure never even checked to see what the conditions would be at that job in that location after Carmella Campanian left that worksite the next day as she was scheduled to do or after Eure had filed a complaint about her. Eure failed to meet her obligation to act as a reasonable person. Therefore, Eure cannot show she was constructively discharged. Eure cannot provide evidence of any of

---

[5] Some Fifth Circuit decisions have omitted "reassignment to work under a younger supervisor" as a factor in its constructive discharge analysis. *See Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 771–72 (5th Cir. 2001); *Aryain*, 534 F.3d at 481; *McFadden v. Seagoville State Bank*, 2009 U.S. Dist. LEXIS 693 (N.D. Tex. 2009).

[6] "Aggravating factors used to support constructive discharge include hostile working conditions or the employer's invidious intent to create or perpetuate the intolerable conditions compelling the resignation." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004).

[7] *Aryain*, 534 F.3d at 481–82 (quoting *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987)), *abrogated in part on other grounds as stated in Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009) (per curiam). Even employees threatened with termination are required to continue to work and not allowed to simply quit and claim constructive discharge. *Id.*

the constructive discharge factors except that her hours were reduced during one week because of her lack of experience and then the next week because she failed to call in or return calls to indicate her availability for work. Further, there is no objective evidence that Sage acted with intent to make Eure resign. Indeed, Eure admits to having a relatively good or good relationship with virtually all of Sage management except for Carmella Campanian, who was only there for a few days and was not scheduled to return.

### 31.

In *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 772 (5th Cir. 2001), the court affirmed summary judgment for the employer where the employee failed to present evidence raising a genuine issue of material fact as to whether a reasonable person in her position would have felt compelled to resign. The employee was offered a position but not the one she desired. *Id.* There the employee did lose compensation and benefits but presented no objective evidence that the employer acted in a fashion that would encourage her to resign. *Id.* The employee argued that she felt demeaned by her change of status in going from a full-time to a part-time employee. *Id.* However, because constructive discharge cannot be based on the employee's subjective preference for one job over another, the court affirmed summary judgment for the employer. *Id.*

### 32.

Similarly, in the case at hand, Eure can only prove a temporary reduction in hours and a temporary reduction in wages. However, like *Hunt*, Eure has put forth no objective evidence showing that Sage acted with the intent to badger, harass, or humiliate Eure in a way that would compel a reasonable person standing in Eure' shoes to resign. *Jett v. Dall. Indep. Sch. Dist.* 798 F.2d 748, 755–56 (5th Cir. 1986), *modified on other grounds*, 491 U.S. 701 (1989). The inquiry is objective and focuses on whether a reasonable employee would have found the different job so

intolerable to the point of feeling compelled to resign. *Id.* Eure provided no objective evidence to prove that her job conditions were objectively intolerable to the point of resigning. A temporary change in an employee's job is not enough to constitute a constructive discharge. *Id.*

**33.**

Eure did not act reasonably because she did not attempt to resolve her employment concerns before resigning. Eure opted to resign immediately rather than continue to work after Ms. Campanian left. Eure did not seek to resolve her job-related concerns. Instead, she resigned almost immediately. Eure pled that she was not allowed to return to work. Plaintiff's Complaint at 3. However, Eure admits in her deposition that this allegation is not correct and that she could have returned. Eure Dep. pp. 67–68. At best, Eure could be claiming that she felt she had to resign. However, the proper inquiry should not focus on whether the employee "felt compelled to resign, but whether a reasonable employee in her situation would have felt so compelled." *McFadden*, 2009 U.S. Dist. LEXIS 693, 32 (citing *Haley*, 391 F.3d at 652).

**34.**

In *Boze*, the Fifth Circuit affirmed summary judgment to the employer on constructive discharge where the resigning employee suffered a poor performance evaluation and loss of responsibilities similar to a demotion. 912 F.2d at 805. Like the decision in *Haley*, the court noted that the employee did not act reasonably because he did not attempt a resolution of his job concerns. *Id.* The court recognized that the employee could have pursued an internal grievance process through his employer or he could have filed a complaint with the Equal Employment Opportunity Commission. *Id.* The court noted that a reasonable employee would have pursued these other options, and that the particular plaintiff-employee pursued neither option. *Id.* Instead, the plaintiff-employee resigned and subsequently filed a lawsuit. The court concluded that this was contrary to what a reasonable employee would have done. *Id.*

16

In the case at hand, Eure resigned immediately after, at most, one unpleasant conversation and a report to Eure by Ms. Brandon, her supportive supervisor, of other comments. Eure did not pursue any grievance procedures and did not seek alternative measures in order to resolve her job concerns. Instead, Eure resigned immediately. Under the Fifth Circuit's precedent, had Eure genuinely felt that her working conditions were upsetting to the point of intolerable, she should have attempted to resolve her concerns instead of immediately resigning. The Fifth Circuit has held that a reasonable employee with concerns about his or her job would first attempt resolution of those concerns before resigning. *See Boze*, 912 F.2d at 805; *McKethan v. Tex. Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993). Eure chose not to do so and thus failed to act as a reasonable employee. Since Eure failed to prove she was constructively discharged, Sage is entitled to a summary judgment as to Eure's claims in their entirety.

**36.**

Alternatively, the granting of a partial summary judgment for the employer against the employee's lost wages claims has been approved by the Fifth Circuit where the plaintiff proved discrimination but failed to prove constructive discharge. *Jurgens*, 903 F.2d at 389. As the Fifth Circuit stated there "it is well settled in this Circuit that in order for an employee to recover back pay for lost wages beyond the date of his retirement or resignation, the evidence must establish that the employer constructively discharged the employee." *Id.* (citing *Borque v. Powell Elec. Mfg. Co.* 617 F.2d 61, 65–66 & n.8 (5th Cir.1980)); *see also Boehms v. Crowell*, 139 F.3d 452, 461–462 (5th Cir. 1998), *cert. denied*, 525 U.S. 1102 (1999) (Plaintiff proved discrimination but was denied any damages for the period after he resigned because he was not constructively discharged). The Court in *Boehms* notes this approach is not a mitigation decision but is instead an additional statement of what is required for the plaintiff to receive post-resignation damages.

*Boehms*, 139 F.3d at 462. The vast majority of Circuit Courts have established the same rule. *Esterquest v. Booz-Allen & Hamilton, Inc.*, 2003 U.S. Dist. LEXIS 12288, 6–7 (S.D. NY. 2003). Thus, Sage should be granted a summary judgment in whole and alternatively as to all damages Eure incurred after leaving her employment.

## VII. DEFENDANT IS ENTITLED TO A SUMMARY JUDGMENT ON PLAINTIFF'S NEGLIGENT HIRING, SUPERVISION, TRAINING AND RETENTION CLAIMS

### 37.

Eure asserts negligence claims; i.e., negligence in hiring, supervision, training and retention under Texas law against Sage, her employer. Eure alleges and admits in her complaint that the actions she complains of are the same ones that are the basis of her discrimination and retaliation claims. Eure also alleges and admits that the events took place in the course of her employment. Plaintiff's Complaint Count III. Eure specifically alleges that "[d]efendant's failure to exercise reasonable care in the hiring, supervision, and training regarding Plaintiff's civil rights was the proximate cause of damages to Plaintiff for which Plaintiff herein sues." *Id.* There are three reasons Eure cannot make any valid negligence claims so Sage is entitled to a summary judgment on Plaintiff's negligence.

### 38.

First, the Texas Supreme Court has held that such negligence claims based on acts of discrimination or harassment are preempted by the exclusive statutory remedy of the TCHRA. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801–02 (Tex. 2010). In *Waffle House*, the plaintiff sued her employer for sexual harassment and negligent supervision and retention. *Id.*; *see also Moyer v. Jos. A. Bank Clothier, Inc.*, 2013 U.S. Dist LEXIS 116762 (N.D. Tex. 2013). In *Moyer*, the plaintiff asserted negligent hiring, negligent entrustment, negligent retention, negligent training and negligent supervision claims in addition to gender discrimination, sexual

harassment, and retaliation claims. *Moyer*, 2013 U.S. Dist LEXIS 116762 at 1–2. The court, following the reasoning in *Waffle House*, held that all such negligence claims preempted by Title VII because Title VII provides exclusive remedy for such claims. *Id.* at 58–59; *see also Howe v. Yellow Book*, 840 F. Supp. 2d 970 (N.D. Texas 2011).

**39.**

Secondly, Sage is entitled to a summary judgment because Plaintiff's negligence claims are barred by the exclusive remedy of worker's compensation for an employee's negligence claims against the employer. *Walls Reg'l Hosp. v. Bomar,* 9 S.W.3d 805, 806 (Tex. 1999) (per curiam); *see also Urdiales v. Concord Techs. Del., Inc.,* 120 S.W.3d 400, 405 (Tex. App.— Houston [14th Dist.] 2003, pet. denied). In *Bomar,* the Texas Supreme Court dealt with sexual harassment claims. *Bomar*, 9 S.W.3d at 806. There nurses sued the hospital which employed them for negligence in allowing doctor on staff to sexually harass them. *Id.* The hospital sought and got a summary judgment. *Id.* The Texas Supreme Court approved the summary judgment. *Id.* The Texas Supreme Court held "[b]ecause the summary judgment record establishes that plaintiffs' injuries occurred in the course of their employment, the Act bars plaintiffs' negligence action against the Hospital." *Id.*

**40.**

The Fifth Circuit has made the same holdings in a case involving both discrimination and negligence claims. *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997). There the Fifth Circuit Court held that such negligence claims were foreclosed by the exclusive remedy of the Texas Workers Compensation Act. *Id.* The Courts in *Moyer* and *Howe*, above, held that such negligence claims are also preempted by the exclusive remedies of Title VII or the Texas Workers Compensation Act. *Moyer*, 2013 U.S. Dist LEXIS 116762 at 58–59 (citing *Ward*, 102 F.3d at 203); *Howe*, 840 F. Supp. 2d at 980.

**41.**

Additionally and alternatively, Sage is entitled to a summary judgment on Eure's negligence claim because Eure has not shown that a Sage employee committed a common law tort against her. *Staples v. Caremark, LLC*, 2009 U.S. Dist. Lexis 100806, 15 (W.D. Tex. 2009).

**42.**

Finally and fourthly, Eure has not and cannot show any negligence on the part of Sage and, thus, Sage is entitled to a summary judgment on Eure's negligence claims. For the reasons set forth in the cases cited above, it is clear that Eure cannot assert negligence claims against Sage and that summary judgment on such claims is proper.

## VIII.  SUMMARY JUDGMENT EVIDENCE

**43.**

In support of this Motion for Summary Judgment, Sage submits and has attached the following exhibits: 1. Affidavit of Gregg Aversa, 2. Affidavit of Barbara Blake, 3. Affidavit of Carmella Campanian, 4. Deposition Excerpts of Eure; 5. Deposition Excerpts of Margie Brandon, and 6. Interrogatory Answers of Eure

## IX.    PRAYER FOR RELIEF

**44.**

For the reasons set forth above, Sage respectfully requests the Court grant it summary judgment on all of Eure's claims and causes of action and grant it all other relief to which it is entitled.

Respectfully submitted,

NAMAN HOWELL SMITH & LEE, PLLC

BY: */s/ John T. Hawkins*

Larry D. Warren
State Bar No. 20888450
Union Square II
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 731-6300
FAX (210) 785-2975
John T. Hawkins
State Bar No. 09249300
400 Austin Avenue, Suite 800
P.O. Box 1470
Waco, Texas 76703-1470
(254) 755-4100
FAX (254) 754-6331

ATTORNEYS FOR THE SAGE CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Defendant's Motion for Summary Judgment on Plaintiff Eure's Claims has been served by electronic filing on Glenn D. Levy, 906 West Basse Road, Suite 100, San Antonio, Texas 78212 on the *3/st* day of July, 2014.

*/s/ John T. Hawkins*
John T. Hawkins

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **LORETTA I. EURE** § | |
| **Plaintiff,** § | |
| § | |
| § | |
| **v.** § | **CIVIL NO.: 5:12-CV-01119-DAE** |
| § | |
| **THE SAGE CORPORATION,** § | |
| **Defendant** § | |

## FACTUAL APPENDIX

I.  Summary Judgment Evidence

   A.  The Affidavit of Gregg Aversa, Sage Corporation President, attached as Exhibit 1.
   B.  The Affidavit of Barbara Blake, Sage Corporation Western Regional Director, attached as Exhibit 2.
   C.  The Affidavit of Carmella Campanian, Sage Corporation Regional Director, attached as Exhibit 3.
   D.  Deposition Excerpts of Eure, attached as Exhibit 4.
   E.  Deposition Excerpts of Margie Brandon, attached as Exhibit 5.
   F.  Interrogatory Answers of Eure, attached as Exhibit 6.

II.  Detailed Factual Statement with Citations.

Loretta Eure ("Eure") was a truck driver Instructor for the San Antonio school of the

Sage Corporation from December 2011 until she resigned on April 4 (Eure Deposition p. 28,

p. 60, and Exhibit 7 to Eure's deposition).[1] Eure enjoyed her time with Sage up until the

event she claims occurred with the visit of Carmella Campanian on March 29-30 (p. 61).

Eure acknowledges other than the alleged event with Carmella Campanian she didn't have

any evidence that the company management was racist or biased (p. 61). Margie Brandon,

her supervisor, was treating her well (p. 63-63). Eure did not receive any negative reports

from anyone at Sage (p. 64).

---

[1] References are to Eure's Deposition, unless otherwise noted.

Eure admits receiving the Corporate Policy Manual (p. 29 and Exhibit 2 to Eure's

deposition). Eure was provided a copy of the Policy Manual, including the President's

Welcome, which invites the employees to talk with the president if there are any problems (p.

30). Eure also received the Equal Employment Opportunity Policy (p. 30), the Sexual

Harassment Policy (p. 36), the Complaint Procedure (p. 37). Eure acknowledges receipt of

these policies (Exhibit 3 to Eure's Deposition). Eure acknowledges these policies provide

procedures for and encourage reports to management and particularly the president if there

are any problems. (pp. 29-40). Ms. Eure also received Sexual Harassment training in

January 2011 (Blake's Affidavit and attached Acknowledgement of the training by Eure).

Eure acknowledges there were no problems between December 21, 2010, when she

began to work for Sage and March 29, 2011, when Carmella first came to visit, other than

minor sarcasm and innuendos from Noel Smith, a co-worker (pp. 39-41). She talked with

Ms. Brandon about Noel Smith's comments and Ms. Brandon attempted to address those

concerns (p. 42). She didn't have any discussions with anyone at Sage that she felt was

inappropriate other than one conversation with Carmella Campanian (pp. 53-54).

She never returned to work after March 30, 2011. Her first contact with anybody at Sage

regarding Ms. Campanian was her 9:45 p.m. March 31 email to Mr. Aversa and Ms. Blake

(pp. 55-56). Eure was sent an email from Barbara Blake on April 1st, asking her to talk with

Chris Thropp and Barbara Blake because Mr. Aversa was not available (Blake Affidavit).

Eure knew Sage was trying to contact her to learn what happened (pp. 59). Eure did not

respond to that email or to numerous attempts to call her about working the next week (p. 59,

and Campanian and Blake Affidavits). Eure recalls talking with Mr. Aversa, that Mr. Aversa

was apologetic for any problems, and that Mr. Aversa asked her to return to work (p. 59 and

also Exhibit 7 to Eure's deposition). She acknowledges that she was not discharged, but simply chose not to return to work (p. 60-64). Despite Mr. Aversa's invitation to return to work, Eure resigned by email dated April 4, 2011 and stuck by that decision despite Mr. Avers'a invitation to return to work. (Exhibit 6 and 7 to Eure's deposition).

Interrogatory number 8 to Eure asks her to describe each and every incident in which she experienced discrimination or other wrongful action against her by Defendant. Eure notes it was not until March 29, 2011 that she believed her gender was an issue with Sage management. In this answer, Eure does not reference any comment made directly to herself, but rather comments that were reported to her by Ms. Brandon. Eure notes no employment action taken against her. Eure was not demoted, disciplined, had her pay or benefits reduced, or had any other actions taken against her. She notes no other problems of any kind except comments allegedly made during Carmella Campanian's visit and a minor issue with Noel Smith.

Carmella Campanian was a visitor to the campus for one special project. Ms. Campanian was not in the chain of command for anyone at the San Antonio school, was not a supervisor of anyone there, and did not have the authority or ability to hire, fire, demote, change the compensation or benefits of, or take other employment action against Eure or Brandon (see Blake, Aversa, and Campanian Affidavits). Neither Carmella Campanian, nor any other person took any employment action against either Eure or Brandon. *Id.*

In her charge with the EEOC, Eure complains only of sexual discrimination and only that she was taken off the schedule and not allowed to return to work (Exhibit 8 to Eure's deposition). Eure acknowledges this complaint was incorrect and that she was invited to return to work for Sage (pp. 60, 68, and Exhibit 7 to Eure's deposition).